UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHARLENE ANN KAZEL,

                Plaintiff,

v.                                              5:14-CV-1019
                                              (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

STANLEY LAW OFFICES                    JAYA A. SHURTLIFF, ESQ.
  Counsel for Plaintiff
215 Burnet Ave.
Syracuse, NY 13203

U.S. SOCIAL SECURITY ADMIN.          GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  (Dkt. No. 14.)  This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Sharlene Ann Kazel ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 10, 11.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.  RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born on May 16, 1971. (T. 104.) She completed a GED. (T. 113.) Generally, Plaintiff's alleged disability consists of head injury, migraines, planter fasciitis, dizziness/balance issues, and impairments in her hands, elbows, wrists, and ankles. (T. 274.) Her alleged disability onset date is January 1, 2010. (T. 110.) Her date last insured is June 30, 2010. (T. 104.) She previously worked as a cashier and rack inspector. (T. 275.)

### B.  Procedural History

On March 4, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 104.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 28, 2012, Plaintiff appeared before the ALJ, Yvette N. Diamond. (T. 107-146.) On July 27, 2012, ALJ Diamond issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 148-163.) On July 24, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.  The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 153-159.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2010 and Plaintiff had not engaged in substantial gainful activity since January 1, 2010. (T. 153.) Second, the ALJ found that, through her date last insured, Plaintiff had the severe impairments of post-concussion syndrome and fibromyalgia. (*Id.*) Third, the ALJ found that, through her date last insured, Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 153-154.) Fourth, the ALJ found that, through her date last insured, Plaintiff had the residual functional capacity ("RFC") to perform:

> sedentary work[.] She could lift and carry 30 pounds occasionally, 10 pounds frequently; stand or walk for 4 hours in an 8 hour workday and sit for 4 hours in an 8 hour workday. [Plaintiff] had unlimited ability to push and pull. She could not climb ladders. [Plaintiff] could engage in frequent bilateral reaching, fingering, handling, climbing, balancing, stooping, kneeling, crouching and crawling. She required a sit/stand option, which is defined as sitting or standing at will without leaving the workstation. She was limited to occasional writing with the dominant, right hand. She could perform simple, routine tasks at less than a production rate pace. [Plaintiff] was limited to occasional contact with coworkers and low stress work, which is defined as occasional decision-making and occasional changes in work setting. She could not be exposed to scents, fragrances, fumes, chemicals and temperature extremes.

(T. 154.)[1] Fifth, the ALJ determined that, through her date last insured, Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 158-159.)[2]

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ did not apply the appropriate legal standard in evaluating the medical opinion evidence in arriving at the RFC finding. (Dkt. No. 10 at 7-11 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to apply the appropriate legal standards in assessing Plaintiff's credibility. (*Id*. at 11-14.) Third, and

---

[2] Although not raised by Plaintiff, nor Defendant, there appears to be conflict between Plaintiff's date last insured ("DLI") and the medical evidence in the record. An applicant must be insured for disability insurance benefits to be eligible for SSD benefits. 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. §§ 404.101(a), 404.110 to 404.130, 404.130 to 404.133; *Arnone v. Bowen,* 882 F.2d 34, 37 (2d Cir.1989). This translates into two requirements: the applicant must have 1) adequate social security earnings to be "fully insured," 20 C.F.R. § 404.110 through § 404.115; and 2) "disability insured status" in the quarter she became disabled or in a later quarter in which she was disabled, *Id.* at § 404.131(a). *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Almost all of the medical evidence in the record is dated after Plaintiff's DLI of June 30, 2010. Primarily, the medical source statements provided by Drs. Shukri and Martin are dated June of 2012, two years after Plaintiff's date last insured, and do not contain a retrospective opinion. (T. 411, 415.) The medical record does contain office treatment notations from Plaintiff's primary care physician dated 2008-2010. (T. 350-355.) The record contains mental health treatment notes from 2005-2007; however, these records are well before Plaintiff's alleged onset date of January 1, 2010. (T. 425-435.)

Plaintiff has the burden of establishing she suffered from a severe impairment before her DLI. Plaintiff's post-concussion syndrome was diagnosed in March 23, 2011 (T. 335) based on an event that occurred years ago, possibly around 1996 or 1997 (T. 352, 437). Although notations from Plaintiff's treating source document complaints of body pain (wrists, knees, hips) dating back to 2008 (T. 354, 358), Plaintiff's fibromyalgia was not diagnosed until October 18, 2011 (T. 376). Notations surrounding the diagnosis of fibromyalgia do not indicate if the earlier symptoms were connected to this diagnosis or another impairment. *See Swainbank v. Astrue,* No. 06-CV-248, 2008 WL 731302 at *1–3 (D.Vt. Mar. 18, 2008), *aff'd,* 356 Fed.Appx. 545 (2d Cir. 2009) (finding that plaintiff failed to meet her burden establishing her impairments were severe before her DLI where the medical record identified plaintiff's impairments eight years after her DLI); *see also, e.g., Jones v. Astrue,* No. 09-CV-1232, 2012 WL 1605566 at *7 (N.D.N.Y. Apr. 17, 2012) *report & rec. adopted,* 2012 WL 1605593 (N.D.N.Y. May 8, 2012) ("[T]he ALJ's sequential evaluation ended at step two, with the (adequately supported) conclusion that there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment on or before [plaintiff's DLI].... This Court finds no error with respect to this aspect of the ALJ's decision.").

The ALJ concluded Plaintiff had severe impairments through her DLI, Plaintiff was capable of her RFC determination through the DLI, Plaintiff was unable to perform her past relevant work through the DLI, and ultimately that Plaintiff was not disabled through the DLI. (T. 151-158.) Neither party raises this issue in their briefs. This Court need not reach this issue because, based on the issues presented in the parties briefs, it is recommended that the Commissioner's decision be affirmed.

lastly, Plaintiff argues the vocational expert ("VE") testimony cannot provide substantial evidence to support the denial of benefits. (*Id.* at 14-15.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly determined Plaintiff's RFC. (Dkt. No. 11 at 4-7 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 8-9.) Third, and lastly, Defendant argues the ALJ properly relied on the testimony of the VE. (*Id.* at 9-10.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner]

6

> next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. The ALJ's RFC Determination

Plaintiff's RFC is the most she can still do despite her limitations. *See* 20 C.F.R. § 404.1545. In making an RFC determination, the ALJ must base her decision on all of the relevant medical and other evidence in the record. *Id.* at § 404.1545(a)(3). In assessing Plaintiff's physical abilities, the ALJ must first assess the nature and extent of Plaintiff's physical limitations and then determine Plaintiff's RFC for work activity on a regular and continuing basis. *Id.* at § 404.1545(b).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling

7

weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

On June 11, 2012, Plaintiff's primary care physician, Laura Martin, D.O. completed a medical source statement. (T. 412-415.) Dr. Martin indicated she treated Plaintiff for approximately ten years. (T. 412.) Dr. Martin listed Plaintiff's diagnoses as fibromyalgia, dizziness, and attention deficit disorder ("ADD"). (*Id.*) Dr. Martin opined Plaintiff was capable of "low stress jobs." (*Id.*)

In terms of exertional limitations, Dr. Martin opined Plaintiff could frequently lift and carry up to ten pounds. (T. 413.) She opined Plaintiff could walk three to four blocks without rest or severe pain. (T. 412.) She opined Plaintiff could sit for 20 minutes at one time before needing to get up, and stand for 20 minutes at one time before needing to change position. (*Id.*) Dr. Martin opined Plaintiff could stand/walk for a total of four hours in an eight hour workday and sit for a total of "at least" six hours in an eight hour workday. (*Id.*) Dr. Martin opined Plaintiff required a job that permitted shifting positions at will. (*Id.*) Dr. Martin opined Plaintiff would require unscheduled breaks in her workday every 20 minutes for approximately five minutes. (*Id.*) She opined Plaintiff would need to elevate her legs while seated. (*Id.*)

Dr. Martin provided non-exertional limitations in addition to her exertional limitations. Dr. Martin opined Plaintiff could rarely: look down; turn her head right or left; or look up. (T. 413.) She opined Plaintiff could frequently hold her head in a static position. (*Id.*) Dr. Martin opined Plaintiff could rarely: twist; stoop (bend); or crouch/squat. (*Id.*) She opined Plaintiff could occasionally climb stairs and should never climb ladders. (*Id.*) Dr. Martin opined Plaintiff could frequently use her hands to grasp, turn, or twist objects. (*Id.*) She opined Plaintiff could occasionally use her fingers for fine manipulation and occasionally use her arms for reaching. (T. 414.)

In addition to physical limitations, Dr. Martin provided mental limitations. She opined Plaintiff would constantly experience pain or other symptoms severe enough to interfere with her attention and concentration. (T. 414.) Dr. Martin opined Plaintiff would be "unable to meet competitive standards" in the following areas: maintaining attention for two hour segments and maintaining a regular attendance and be punctual within customary, usually strict tolerances. (*Id.*) In all other areas of Plaintiff's mental abilities, Dr. Martin opined Plaintiff could meet competitive standards. (*Id.*) Dr. Martin opined that on average Plaintiff's impairments or treatment would cause her to be absent from work about four days per month. (T. 415.)

Plaintiff's neurologist, Hassan Shukri, M.D., also provided a medical source statement in June of 2012. (T. 408-411.) Dr. Shukri treated Plaintiff for her post-concussion syndrome. (T. 408.) Dr. Shukri indicated Plaintiff was capable of low stress jobs. (*Id.*)

In terms of exertional limitations, Dr. Shukri opined Plaintiff could frequently lift and carry less than ten pounds and could occasionally lift and carry ten pounds. (T.

9

409.) Dr. Shukri opined Plaintiff could walk less than a city block without rest or sever pain. (T. 408.) He opined Plaintiff could sit for 15 minutes at one time and stand for 15 minutes at one time. (*Id.*) Dr. Shukri opined Plaintiff could sit for four hours, stand for four hours, and walk for four hours in an eight hour workday. (*Id.*) He opined Plaintiff required a job that would allow her to change positions at will. (*Id.*)

In terms of non-exertional limitations, Dr. Shukri opined Plaintiff could frequently: look down; turn her head right or left; look up; and hold her head in a static position. (T. 409.) He opined Plaintiff could frequently: twist; stoop (bend); crouch/squat; and climb stairs. (*Id.*) He opined Plaintiff could never climb ladders. (*Id.*) Dr. Shukri opined Plaintiff could occasionally use her hands to grasp, turn and twist objects; occasionally use her fingers for fine manipulation; and frequently use her arms for reaching. (T. 409-410.) Dr. Shukri noted Plaintiff would require unscheduled breaks "frequently" for about thirty minutes. (T. 409.) Dr. Shukri opined Plaintiff should elevate her legs with prolonged sitting. (*Id.*)

Dr. Shukri provided mental limitations as well. He opined Plaintiff was "unable to meet competitive standards" in the area of "performing at a consistent pace without an unreasonable number and length of rest periods." (T. 410-411.) Dr. Shukri opined Plaintiff had additional areas of mental limitations, but none that would precluded employment. (*Id.*) Dr. Shukri opined Plaintiff would be absent more than four days per month due to her impairments. (T. 411.)

In making her RFC determination the ALJ afforded the medical source opinions of Drs. Shukri and Martin "moderate weight." (T. 157.) The ALJ stated the opinions were "not wholly consistent with the record." (*Id.*) The ALJ specifically reasoned Drs.

10

Shukri and Martin's weight restrictions were inconsistent with Plaintiff's testimony that she could lift and carry her thirty pound child. (*Id.*) The ALJ concluded Dr. Shukri's opinion was inconsistent with treatment notations which indicated Plaintiff had normal motor and sensory exams. (*Id.*) The ALJ also concluded that "the debilitating limitations [Dr. Shukri] presented [were] not substantiated by his own observations." (*Id.*) The ALJ stated her RFC determination was supported by "some of the opinions articulated in Dr. Martin and Dr. Shukri's medical source statement[s]" as well as the record as a whole. (*Id.*)

Plaintiff argues the ALJ's reasoning for affording Plaintiff's treating sources' opinions "moderate weight" was inconsistent with the appropriate legal standard under 20 C.F.R. § 404.1527(c)(2). (Dkt. No. 10 at 8 [Pl.'s Mem. of Law].)[3] Plaintiff argues the ALJ's conclusion that the opinions "were not whole consistent with the record" was inappropriate and the ALJ failed to apply the factors outlined in the Regulations in affording weight to the opinions. (*Id.* at 8-9.) Further, Plaintiff argues the ALJ failed to provide medical evidence in the record that contradicted the opinions. (*Id.* at 9.)

Defendant counters that the ALJ properly afforded weight to the opinions of Plaintiff's treating sources in accordance with the Regulations; and further, the ALJ's RFC determination was supported by substantial evidence and any error the ALJ may have made affording weight was harmless. (Dkt. No. 11 at 5-7.)

First, the ALJ did not err as a matter of law in affording weight to the opinions of the treating sources. Overall, where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of

---

[3] In her brief Plaintiff cites to the outdated code section, 20 C.F.R. § 404.1527(d); however, this is most likely an oversight as Plaintiff properly outlines the Regulations regarding the "treating physician rule."

11

the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Here, the ALJ's statement that the opinions were "not wholly consistent with the record" indicated the ALJ did not afford the opinions controlling weight because the opinions were inconsistent with other substantial evidence in the record, as required under 20 C.F.R. § 404.1527(c)(2).

The ALJ followed the factors outlined in 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ identified Dr. Martin as Plaintiff's treating physician and Dr. Shukri as Plaintiff's neurologist in accordance with 20 C.F.R. § 404.1527(c)(2)(i) and (iv). (T. 155, 156.) The ALJ relied on medical evidence in the record, and Plaintiff's testimony, to support her determination that the opinions were inconsistent with the record "as a whole" in accordance with 20 C.F.R. § 404.1527(c)(2)(iii). (T. 157.) Therefore, the ALJ's adherence to the Regulations was clear.

Plaintiff specifically argues the ALJ failed to cite medical evidence to support her determination and instead relied only on Plaintiff's testimony. (Dkt. No. 10 at 10 [Pl.'s Mem. of Law].) To be sure, in concluding Plaintiff could lift more than stated in the treating sources' opinions, the ALJ relied heavily on Plaintiff's testimony that she was able to lift her thirty pound child; however, the ALJ also specifically discussed medical evidence in the record which she determined supported her conclusion, such as treatment notations from Dr. Shukri indicating normal examinations. (T. 157.) Further, the Regulations do not state the ALJ must rely only on medical opinion evidence in

12

affording weight to the opinion. The Regulations state the ALJ may rely on "the opinion's consistency with the record as a whole" in affording the treating source's opinion weight. 20 C.F.R. § 404.1527(c)(2)(iii). The ALJ's overall decision included a thorough discussion of the medical evidence in the record including objective medical evidence, treatment notations from Dr. Shukri, treatment notations from Dr. Martin, and treatment notations from Plaintiff's rheumatologist, James Hyla, M.D.

Second, the ALJ's physical RFC determination was supported by substantial evidence.[4] The ALJ limited Plaintiff to sedentary work with additional non-exertional limitations. (T. 154.) Dr. Martin and Dr. Shukri's opinions regarding Plaintiff's ability to sit, stand, and walk within an eight hour workday fall squarely within the parameters of the requirements of sedentary work under 20 C.F.R. § 404.1567(a). (T. 408, 412.) Both doctors opined Plaintiff required a job with the ability to sit and stand at will, which the ALJ provided for in her RFC determination. (T. 154.) The ALJ's RFC determination regarding Plaintiff's non-exertional limitations was supported by Dr. Shukri's opinion that Plaintiff could frequently twist, stoop (bend), crouch/squat, climb stairs, and reach. (T. 409.) The RFC was also supported by Dr. Martin's opinion Plaintiff could frequently handle objects. (T. 413.) The ALJ limited Plaintiff to only occasional writing with her right hand, which was supported by both doctor's opinions (T. 410, 414) and Plaintiff's testimony (T. 131).

---

[4] Plaintiff makes the general argument that the ALJ failed to properly apply the treating physician rule in accordance with the Regulations. She further argues the limitations provided by her treating sources would preclude employment; however, Plaintiff specifically points to the lifting limitations imposed by the sources. (Dkt. No. 10 at 10 [Pl.'s Mem. of Law].) Plaintiff does not argue the ALJ erred in his mental RFC determination; therefore, the ALJ's mental RFC determination will not be discussed herein.

Third, any error the ALJ may have made specifically regarding Plaintiff's ability to lift and carry was harmless. Both treating sources opined Plaintiff could lift and carry within the requirements of sedentary work. (T. 409, 410.) The VE ultimately testified that Plaintiff could perform the sedentary occupations of: order clerk (DOT 209.567-014), stuffer (DOT 731.685-014), and addresser (DOT 209.587-010). (T.140-141.) None of the occupations identified by the VE require Plaintiff to lift and/or carry more than 10 pounds. DICOT 209.567-014, 731.685-014, 209.587-010, 1991 WL 671794.

Therefore, had the ALJ adopted the lifting and carrying limitations imposed by Drs. Shukri and Martin, as Plaintiff urges, she would still have been able to perform the occupations provided by the VE.

In sum, remand is not recommended because the ALJ adhered to the Regulations in affording the opinions of Plaintiff's treating sources "moderate weight," the ALJ's RFC determination was supported by substantial evidence, and any error the ALJ may have made regarding Plaintiff's ability to lift and carry was harmless.

### B.     The ALJ's Credibility Analysis

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with

sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms was no credible "to the extent they [were] inconsistent with the above [RFC]." (T. 155.) In

15

making her credibility determination, the ALJ discussed Plaintiff's testimony regarding her activities of daily living and medical treatment she received. (T. 154-155.) The ALJ further relied on the objective medical evidence in the record, including electrodiagnostic testing and physical examinations, and medical opinion evidence in the record. (T. 155-156.)

Plaintiff argues the ALJ erred in her credibility assessment because she relied "nearly entirely upon Plaintiff being able to care for her children." (Dkt. No. 10 at 13 [Pl.'s Mem. of Law].) Defendant counters the ALJ properly assessed Plaintiff's credibility. (Dkt. No. 11 at 8-9.) To be sure, the ALJ discussed at great length Plaintiff's activities of daily living, which primarily focused on her role as a mother. (T. 154-155, 157.) However, the ALJ did not conclude that Plaintiff's ability to care for her children was determinative of her ability to work. The ALJ considered Plaintiff's ability to care for her children as one factor in her overall credibility determination that Plaintiff's allegations regarding the debilitating nature of her impairments were not as severe as alleged. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) ("The ALJ correctly noted that [plaintiff] was able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer."); *see Morris v. Comm'r of Soc. Sec.,* No. 5:12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted Plaintiff's testimony regarding her symptoms to the extent that it is inconsistent with other evidence.").

Further, as outlined above, the ALJ relied on Plaintiff's activities of daily living as one factor in her overall credibility analysis. The ALJ also relied on the objective medical evidence in the record and Plaintiff's treatment, including medications. (T. 155-156.) The ALJ relied on Plaintiff's testimony that she applied for customer service positions in her area indicating Plaintiff believed she could work. (T. 118.) Therefore, the ALJ properly assessed Plaintiff's credibility in accordance with the Regulations and remand is not recommended.

### C. The ALJ's Step Five Determination

Plaintiff argues the hypothetical posed to the VE was incomplete based on additional limitations imposed by Plaintiff's treating sources. (Dkt. No. 10 at 14-15 [Pl.'s Mem. of Law].)

Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 18, 2016

/s/ Bill Carter
William B. Mitchell Carter
U.S. Magistrate Judge